State of Wisconsin, Plaintiff-Respondent,
v.
Justin P. Brandl, Defendant-Appellant.
No. 2006AP119-CR.
Court of Appeals of Wisconsin, District III.
August 1, 2006.
¶1 HOOVER, P.J.[1]
Justin Brandl appeals a judgment of conviction for operating while intoxicated, second offense, and an order denying his motion to suppress evidence. Brandl asserts police violated his Fourth Amendment rights when they entered his home without a warrant. Because an objective police officer could have believed there was a need to render aid, this court concludes the police entered Brandl's home under an exception to the warrant requirement and, accordingly, the judgment and order are affirmed.

Background
¶2 At approximately 12:30 a.m. on February 25, 2005, deputy George Gulczynski was dispatched to the scene of an apparent accident. A utility pole had been sheared off at the ground, remaining supported only by the wires still attached to it. Snow had recently fallen, so Gulczynski was reasonably certain, given tire tracks leaving the roadway, that a vehicle had struck the pole. A witness informed Gulczynski that she had observed a vehicle leaving the scene. She stated the vehicle was being driven erratically and, when it turned a nearby corner, it ran over the lawn of the home there.
¶3 Gulczynski observed drops of oil, coolant, or transmission fluid on the ground. He and another officer followed the drops and corresponding tire tracks to Brandl's residence. When they arrived, Gulczynski looked through a service window of the garage and observed a vehicle with heavy front end damage, consistent with a pole collision. Gulczynski informed headquarters he was concerned the driver may be impaired or injured. His sergeant responded to the scene.
¶4 The officers rang the doorbell and knocked on the door and windows, but no one answered. Gulczynski thought he observed a small smudge of blood near the front door. The sergeant discovered the garage overhead door was not entirely closed. He opened it further and noticed that the door to the residence was standing open. The officers announced their presence and entered the home.
¶5 First, a young woman came out of the bathroom, followed in a matter of seconds by Brandl. Brandl, naked and with blood on him, approached Gulczynski and "assumed the handcuffing position." Brandl said nothing, however, except to decline an ambulance. The officers allowed Brandl to dress and when he returned, he again presented himself to be handcuffed.
¶6 Gulczynski informed Brandl that he was suspected of being involved in an operating while intoxicated, hit-and-run accident. Brandl was arrested and transported. He was charged with operating while intoxicated, second offense, as well as operating with a prohibited alcohol concentration, second offense, after testing revealed a .169% blood alcohol concentration.
¶7 Brandl filed a suppression motion based on the warrantless entry into his home and garage.[2] The court ultimately denied the motion, concluding police had probable cause to believe a crime had been committed and that exigent circumstancesboth the possible destruction of evidence and the need to render aidexisted. Brandl also challenged the arrest, asserting police had no way to know whether he or the woman had been driving the car that evening. The court rejected the challenge, stating that it was reasonable for police to make such an inference under the circumstances and that any further challenges were more appropriate for trial, not a suppression hearing.
¶8 Brandl then entered a plea agreement. He pled no contest to operating while intoxicated, second offense. He was sentenced to ten days in jail, his license was suspended for thirteen months, and he was ordered to pay a fine and attend a victim impact panel.

Discussion
¶9 Review of a suppression motion presents us with a question of constitutional fact, which we review in two parts. State v. Hughes, 2000 WI 24, ¶15, 233 Wis. 2d 280, 607 N.W.2d 621. We uphold the trial court's findings of historical facts unless clearly erroneous, but we apply those facts to the law de novo. Id.
¶10 A warrantless entry into one's home by police is presumptively prohibited by both the United States and Wisconsin Constitutions. Id., ¶17. However, there are recognized exceptions to the warrant requirement, including when the government can show both probable cause and exigent circumstances that overcome the individual's right to be free from government interference. Id. The government bears the burden of establishing an exception to the warrant requirement. State v. Leutenegger, 2004 WI App 127, ¶12, 275 Wis. 2d 512, 685 N.W.2d 536. Whether a warrantless entry is justified by exigent circumstances is also a mixed question of fact and law. Id., ¶13.
¶11 The first question is whether Gulczynski had probable cause to enter Brandl's garage and home. First, we note that in this case, Gulczynski needed probable cause to search, not to arrestwhile the terms are often used interchangeably, they implicate distinct interests. See Hughes, 233 Wis. 2d 280, ¶19. "In the search context, the individual's privacy interest in his or her home and possessions is at stake." Id., ¶21. Thus, the test is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id.
¶12 Here, the police had probable cause to search Brandl's home. The collision with the utility pole not only sheared it off its base but caused a power outage. The trial court noted this could be considered criminal damage to property, and even Brandl conceded that it could be considered at least a hit-and-run. There was a fair probability that evidence of some crime was in Brandl's garage or home because police were able to follow a trail starting from just before the scene of the accident and ending where the vehicle came to rest.
¶13 The second part of the analysis is whether exigent circumstances justified the warrantless entry. Id., ¶23. There are four well-recognized categories of exigent circumstances: hot pursuit of a suspect, a threat to the safety of a suspect or others, a risk that evidence will be destroyed, and a likelihood that the suspect will flee. Leutenegger, 275 Wis. 2d 512, ¶9.
¶14 Gulczynski testified that he was both concerned about the potential loss of evidence and about the possibility the driver of the vehicle had been injured. It is not necessary to discuss the concern of lost evidence, because the concern for Brandl's safety or welfare was a sufficiently exigent circumstance. See id., ¶4.
¶15 Brandl has made a point of showing Gulczynski's subjective beliefs regarding the need for a search, attempting to show that Gulczynski's motives were more than altruistic. This is likely because previous jurisprudence on what was known as the "emergency rule" articulated a subjective test. Officers could not be concerned with obtaining evidence, only with rendering aid, to justify a warrantless search based on concern for the suspect's safety. See id., ¶¶4-6.
¶16 However, we have moved away from the subjective test and on to a more objective test: "whether a police officer under the circumstances known to the officer at the time [of entry] reasonably believes that delay in procuring a warrant would gravely endanger life." Id., ¶19 (citations omitted).
¶17 Here, the officers knew the following. Based on tire tracks in fresh snow, a vehicle had left the roadway and struck a utility pole with enough force to completely tear the pole from its base and knock out power. The vehicle, while able to be driven away, was leaking fluids. The driver missed a corner when making a turn, driving on a residential lawn rather than the street. When the officers arrived at the home where the vehicle had stopped, they could see heavy damage to the vehicle through the window. When they attempted to make contact with the resident of the home, there was no answer and Gulczynski thought he observed blood near the door.
¶18 Objectively, it was reasonable to infer the driver of the vehicle may have suffered a serious injury. This inference is based on the force of the impact with the pole, the witness report of erratic driving away from the scene, failure to answer the door, and the possible observation of blood.
¶19 Brandl makes much of the fact that the officers never found blood in the vehicle, that the windshield was not cracked to suggest injury, and that officers failed to completely examine the vehicle when they arrived on the scene to support their theory of an injured driver. However, the applicable test is not concerned with what can be ruled out, but what an officer could objectively, reasonably believe.
¶20 Finally, Brandl asserts that there was no probable cause to arrest him as the driver of the vehicle because no one ever asked if he or the woman was the driver. However, this court agrees with both the trial court and the State. The trial court noted that when the police arrived, the woman was behaving normally. There is no suggestion that she was uncooperative once officers were in the home. Brandl, on the other hand, was bloody and naked and presented himself for handcuffing. Thus, the court concluded, it was reasonable to infer Brandl was the suspect police were seeking. As the State notes, Brandl's act of not once but twice presenting himself to be handcuffed can be taken as a nonverbal statement under WIS. STAT. § 908.01(1), and can be interpreted as an admission or assertion of guilt.
By the Court.  Judgment and order affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] Brandl separated the entry of the garage from the entry into the home, both in the trial court and on appeal. This court is not convinced the distinction is necessary, particularly when, as here, the garage is directly connected to the home.